# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 13-50069

D.C. Docket No. 1:12-CR-105-43

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HADI ALI YASSINE,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit
**FILED**
July 2, 2014

Lyle W. Cayce
Clerk

**FILED**

JUL 3 0 2014

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

Appeal from the United States District Court for the
Western District of Texas, Austin

Before BARKSDALE, CLEMENT, and OWEN, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

ISSUED AS MANDATE:  07/24/2014

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By:  s/ Melissa V. Mattingly
Deputy

New Orleans, Louisiana 07/24/2014

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-50069

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HUSSEIN ALI YASSINE, also known as Mike, HADI ALI YASSINE,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:12-CR-105-1

Before BARKSDALE, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Primarily at issue in this appeal is whether Hussein Ali Yassine (Mike Yassine) received a fair trial.  He and Hadi Ali Yassine (collectively, Appellants) were convicted by a jury for conspiracy to knowingly conduct, and attempt to conduct, financial transactions which each believed involved proceeds of unlawful activity, in violation of 18 U.S.C. § 1956(h), (a)(1)(B)(i),

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 13-50069

and 18 U.S.C. § 2 (count 1). Additionally, Mike Yassine was convicted on three counts of money-laundering (3–5), in violation of 18 U.S.C. § 1956(a)(3)(B) and 18 U.S.C. § 2, while Hadi Yassine was convicted on two of these three counts (3–4). Mike Yassine was sentenced, *inter alia*, to 151 months' imprisonment, and assessed a $60,000 fine; Hadi Yassine, *inter alia*, to 60 months' imprisonment, and a $30,000 fine. They challenge their convictions and sentences. AFFIRMED.

## I.

Mike Yassine owned and operated seven nightclubs (Yassine Enterprises) in Austin, Texas. His brothers, Hadi and Steve Yassine, worked for, and received a substantial portion of their income from, the nightclubs. Marisee Ruales worked as the general secretary for Yassine Enterprises.

Mohamad Yassine, Mike Yassine's cousin, had lived in Austin and worked for Mike Yassine for approximately ten years. On several occasions, Mike Yassine fired and re-hired Mohamad Yassine. After a failed attempt to open his own club in Austin in 2001, Mohamad Yassine again returned to work for Mike Yassine. By 2007, after problems with cocaine use, Mohamad Yassine moved to Colorado. In November of that year, the Government approached Mohamad Yassine to work as an informant; he agreed.

The FBI created a cover story for Mohamad Yassine, which involved his making controlled purchases of approximately four to five kilograms of cocaine at a time in Austin, and then transporting it to buyers in Colorado. Mohamad Yassine was given devices to record conversations with Mike, Steve, and Hadi Yassine (these devices included software which prevented any changes being made to the recordings). The recordings span conversations from July 2008 through December 2011.

No. 13-50069

Between December 2007 and October 2008, Steve Yassine helped Mohamad Yassine purchase cocaine, with Hadi Yassine's becoming involved with those purchases around August 2008. And, Mohamad Yassine explained to Hadi and Steve Yassine that he needed help making drug-sale proceeds appear to come from legitimate employment.

Thereafter, Mohamad Yassine sought Mike Yassine's assistance in laundering those proceeds. From September 2008 through June 2009, Mohamad Yassine would take to Yassine Enterprises cash he received from selling drugs; in exchange for the cash, Mike Yassine would write Mohamad Yassine checks from one or more of his clubs' accounts for less than the amount of the cash, thereby keeping a percentage for himself. Although the Government recorded the serial number of every bill Mohamad Yassine provided (each was either scanned or photocopied), the Government primarily monitored only the denominations, rather than serial numbers, of bills deposited.

On 20 March 2012, Appellants Mike and Hadi Yassine, as well as Steve Yassine and Ruales, were charged in a five-count indictment. In count one, Appellants and Ruales were charged with, from on or about October 2008 until the date of the indictment, conspiring to knowingly conduct, and attempt to conduct, financial transactions which each believed involved the proceeds of unlawful activity. In count two, Steve Yassine and Ruales were charged with laundering $6,000 on 19 September 2008. In counts three and four, Appellants and Ruales were charged with laundering $8,500 on 10 October 2008 (3) and $100,000 on 30 April 2009 (4). And, in count five, Mike Yassine and Ruales were charged with laundering $100,000 on 24 June 2009. Just prior to trial, Ruales pleaded guilty to a reduced charge (misprision of felony).

No. 13-50069

Trial began 1 October 2012. The Government presented its case over five days, with its evidence including, *inter alia*, some of the recordings and transcripts of them, and testimony from: two expert linguists, two FBI agents, an FBI analyst, an IRS agent, Mohamad Yassine, and Rommel Gomez (an employee of Yassine Enterprises). The Government rested on 9 October. None of the remaining defendants (Mike, Hadi, and Steve Yassine) testified or presented any evidence. The jury heard closing arguments and instructions on 10 October, and returned its verdict on 12 October.

Steve Yassine was acquitted of the money laundering charged in count two. As noted, Mike Yassine was convicted on counts one and three through five; Hadi Yassine, on one, three, and four.

## II.

In challenging their convictions and sentences, Appellants present numerous claims. Each fails.

### A.

For his convictions, and unlike Hadi Yassine, Mike Yassine does not claim insufficient evidence. Instead, he maintains he did not receive a fair trial. For his sentence, he presents five claims.

#### 1.

Mike Yassine had to defend against one charge of conspiracy and money laundering for only three transactions. He presents two claims: as a result of six claimed errors, cumulative error requires a new trial; and the court abused its discretion by denying two of his three continuance motions.

##### a.

Regarding his convictions, Mike Yassine claims cumulative error. "'Cumulative error' justifies reversal only when errors 'so fatally infect the trial that they violated the trial's fundamental fairness.' . . . [T]he cumulative error

4

No. 13-50069

doctrine necessitates reversal only in rare instances". *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir.) (en banc), *cert. denied*, 133 S. Ct. 525 (U.S. 2012) (citations omitted); *see also United States v. Alaniz*, 726 F.3d 586, 628 (5th Cir. 2013) (noting relief requires constitutional errors fatally infect trial). The doctrine is "practically never found persuasive", especially where "the [G]overnment presents substantial evidence of guilt". *Delgado*, 672 F.3d at 344 (citation omitted). It goes without saying that "non-errors have no weight in a cumulative error analysis". *Id.*

In support of his cumulative-error claim, Mike Yassine asserts the district court erred in six ways: (i) denying his motions to reconsider detention; (ii) granting the Government's protective order; (iii) denying two of his three continuance motions; (iv) refusing to require the Government to provide defendants with its final transcripts of recorded statements for use at trial (transcripts) until 30 days prior to trial; (v) denying his request to have his expert present in the courtroom during the Government's linguists' testimony; and (vi) not allowing that expert to testify. He maintains the cumulative effect of these claimed errors deprived him of a fair trial, requiring reversal.

### i.

Regarding denial of his motions to reconsider detention, after a magistrate judge (MJ) ordered Mike Yassine detained on 27 March 2012, he moved on 16 April for the court to reconsider detention. In a 17 May order, the district court denied the motion, finding a preponderance of the evidence supported the MJ's conclusion that there was a "substantial risk [Mike Yassine] will not appear at trial". *United States v. Yassine*, No. 1-12-CR-105, order at 3 (W.D. Tex. 17 May 2012).

In so ruling, the court found the evidence established Mike Yassine: (1) was a world traveler, "at home in many countries, and fluent in multiple

No. 13-50069

languages"; (2) had family in Lebanon (a country with which there is no extradition agreement); (3) owned and managed businesses generating "vast sums of liquid cash" (and so there was no way to know whether he had "substantial additional resources hidden somewhere"); and (4) might "still have access or control over money" in Swiss or Lebanese bank accounts. *Id.* at 3–4. The court concluded that, until it was "fully satisfied of [Mike Yassine's] economic situation, there [was] a risk [he might] not appear at trial". *Id.* at 4.

On 28 August 2012, Mike Yassine filed a sealed, second motion to reconsider detention. In denying the motion three days later, the court stated its earlier findings on the relevant issues had not changed. *United States v. Yassine*, No. 1-12-CR-105, order at 3 (W.D. Tex. 31 Aug. 2012).

When reviewing a detention order, "[a]bsent an error of law, this [c]ourt [applies] a deferential standard of review . . . . On appeal, the question [is] whether the evidence as a whole supports the conclusions of the proceedings below". *United States v. Nguyen*, 166 F. App'x 118, 119 (5th Cir. 2006) (citation and internal quotation marks omitted). The same standard of review applies to denial of a motion to reconsider detention. *United States v. Cortez*, 262 F. App'x 618, 619 (5th Cir. 2008).

Considering both the applicable deferential standard of review and the findings outlined in the district court's order for the first motion to reconsider detention, the court did not err in denying either motion.

### ii.

For Mike Yassine's claiming the court erred in granting "the Government's [2 April 2012] protective order (and subsequent denial of a request to withdraw it)", the order barred defendants' counsel from disclosing to "outside parties such as friends, associates and family members of the defendants" any information relating to Government witnesses or agents.

No. 13-50069

*United States v. Yassine*, No. 1-12-CR-105, first protective order at 1 (W.D. Tex. 2 Apr. 2012). Additionally, counsel were to ensure, *inter alia*, none of this information would be left at any jail. Accordingly, Mike Yassine could not review discovery in jail without his attorney.

That 2 April 2012 order was based upon the Government's sealed, *ex parte* motion, pursuant to Federal Rule of Criminal Procedure 16(d). The motion was granted that same day, after the court found sufficient cause: "To protect the witnesses cooperating with the [G]overnment and to protect the identity of unindicted or otherwise uncharged innocent third parties, and to ensure the information is solely utilized for preparing for [this] trial". *Id.*

On 27 May 2012, Mike Yassine moved for his temporary release into the custody of the United States Marshals Service to prepare for trial. On 1 June, following a status conference, the court ordered the Marshals Service to either bring defendants to the courthouse three-days-a-week or make arrangements for defendants and their counsel to access the multi-purpose room at the jail where the detained defendants were held. *United States v. Yassine*, No. 1-12-CR-105, order at 1–2 (W.D. Tex. 1 June 2012).

A court may, within its discretion, at any time and "for good cause, deny, restrict, or defer discovery or inspection". Fed. R. Crim. P. 16(d)(1). The Government, of course, has the burden of showing the requisite good cause. *United States v. Carriles*, 654 F. Supp. 2d 557, 565–66 (W.D. Tex. 2009) (citing, *inter alia*, *United States v. Fallen*, 498 F.2d 172, 175 (8th Cir. 1974)). "[T]he trial court can and should, where appropriate, place a defendant . . . under enforceable orders against unwarranted disclosure of the materials which [he] may be entitled to inspect". *Id.* at 566 (first alteration in original) (citing *Alderman v. United States*, 394 U.S. 165, 185 (1969)). Defendants had the

No. 13-50069

burden of showing the protective order would cause prejudice. *Id.* (citing, *inter alia*, *United States v. Davis,* 809 F.2d 1194, 1210 (6th Cir. 1987)).

Mike Yassine's attorney entered his appearance on 14 April 2012; subsequently, he did not object to the earlier 2 April protective order. And, regarding the earlier-quoted assertion in his opening brief here, he does not provide the requisite cite to the record for when he claims he moved to have the order withdrawn. *See* 5th Cir. R. 28.2.2. Moreover, he does not appear, from our review of the record, to have moved to have it withdrawn.

Accordingly, review is only for plain error. Fed. R. Crim. P. 52(b). Under that standard, Mike Yassine must show a forfeited, clear-or-obvious error that affected his substantial rights. *E.g., Puckett v. United States*, 556 U.S. 129, 135 (2009). Even if he shows such reversible plain error, this court has the discretion whether to correct the error, and should do so only if it seriously affects the fairness, integrity, or public reputation of the proceedings. *See id.* Mike Yassine fails to show clear or obvious error.

### iii.

Regarding the last two of his three continuance motions being denied, Mike Yassine's primary complaints are: (1) the Government did not give notice until 31 August 2012 of which recorded conversations it intended to use at trial (which began that 1 October), although "the Government had years to finalize their transcripts"; (2) the court applied a "dual standard" when comparing the Government's notice of expert testimony (apparently asserting that, if the court had granted his September continuance motion, then his notice of expert testimony would have been timely; thus the denial "prejudiced" him); and (3) the court's reason for refusing a continuance was "prompted by an arbitrary deadline".

No. 13-50069

The denial of a continuance motion is reviewed for abuse of discretion and will be affirmed unless "defendant demonstrates *serious* prejudice". *United States v. Messervey*, 317 F.3d 457, 461–62 (5th Cir. 2002) (emphasis added). This court considers the totality of the circumstances. *Id.* at 462. Relevant factors are the: amount of time available; defendant's role in causing the need for additional time; likelihood of prejudice resulting from denial; and availability of discovery. *Id.*

As noted, Mike Yassine's attorney entered his appearance on 14 April. Only three days later, on 17 April, he received approximately 40 compact discs (CDs) from the Government. Subsequently, the Government made 42 additional CDs available on various dates, the last being 11 June. These CDs included all interactions between defendants and Mohamad Yassine.

On 27 April, the court set trial for 4 June. At the first status conference, on 2 May, the Government agreed to provide its preliminary transcripts to defense counsel within ten days (although there was no legal obligation to do so).

On 3 May, Mike Yassine filed his first continuance motion, requesting a 1 October 2012 trial date. The motion was granted on 17 May, the court's finding the case was "complicated" and denying the continuance "would deny [defense counsel] the reasonable time necessary for effective preparation". *United States v. Yassine*, No. 1-12-CR-105, order at 2 (W.D. Tex. 17 May 2012).

On 30 July, Mike Yassine filed a second continuance motion because of the "overwhelming amount of discovery provided by the Government, the limits upon [his] ability to review that discovery and assist [his] counsel, and the absence of finalized transcripts of the translated, recorded conversations [with] the Government's primary confidential informant". The motion was denied, with the court's summarizing the procedural history, and noting

9

No. 13-50069

defendants had "most, if not all" recordings. *United States v. Yassine*, No. 1-12-CR-105, order at 2 (W.D. Tex. 15 Aug. 2012). The court also explained: the Government agreed to deliver any remaining recordings and transcripts 30 days prior to trial; the court had established special procedures for defendants to review discovery; and it had several, multi-defendant criminal cases set for trial through February 2013, "along with a significant civil docket". *Id.* In addition to this schedule, the courthouse would be closed because the court was moving to a new building in November and December. *Id.* The district court concluded there was still time to prepare for trial based, in part, on defendants having the majority of the recordings and transcripts well before they had a right to these materials; the lack of "difficulty" or "hesitancy" by defendants' counsel to file several motions; and the lack of complexity in the case. *Id.* at 3.

The Government produced its first version of final transcripts on 31 August 2012, 30 days before the start of trial. The following day, Mike Yassine's attorney began visiting the jail in which Mike Yassine was held to review transcripts with him. On 16 September, Mike Yassine's attorney e-mailed the Government a 15-page document outlining what Mike Yassine believed were inaccuracies in the Government's final transcripts. In response to that e-mail, the Government, on 27 September, produced its second version of the final transcripts. (Overall, the Government used only approximately three and a half hours of recorded conversations at trial.)

Later that day, Mike Yassine filed a sealed, renewed continuance motion. The court denied it the following day because a venire of over 125 members had been ordered, the case was relatively simple and could be tried in two weeks, and defendants had "ample opportunity for preparation", given the court's having granted one continuance motion. *United States v. Yassine*, No. 1-12-CR-105, order at 1–2 (W.D. Tex. 28 Sept. 2012).

10

No. 13-50069

The court granted the first continuance motion. Considering the totality of the circumstances and the relevant factors in this case, it did not abuse its discretion by denying the second and third.

### iv.

Concerning the Government's not being required to provide its final transcripts to defendants until 30 days prior to trial, Mike Yassine asserts the court "had the discretion, power and authority under [*United States v. Onori*, 535 F.2d 938 (5th Cir. 1976)] and Rule 16 to order the Government to produce their final trial transcripts". Although Mike Yassine does not discuss which aspect of Rule 16 supposedly controls, he does discuss Hadi Yassine's 24 July 2012 motion for production of the Government's final transcripts, which claimed *Onori* established "transcripts are tangible evidence when introduced at trial and, as such are discoverable under Rule 16". *Onori* neither establishes this, nor references Rule 16 or "tangible evidence".

On the other hand, Federal Rule of Criminal Procedure 16(a)(2) does not authorize "discovery or inspection of statements made by prospective government witnesses except as provided by 18 U.S.C. § 3500", the Jencks Act. Fed. R. Crim. P. 16(a)(2). Under that Act, "no statement . . . in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of [subpoena], discovery, or inspection until said witness has testified". 18 U.S.C. § 3500(a). "Statements" include "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously". 18 U.S.C. § 3500(e)(2). The Jencks Act requires the Government to produce any statement by a witness it calls "in the possession of the [G]overnment [relating] to the subject matter of the witness's testimony

No. 13-50069

. . . after direct examination of the witness has been completed". *United States v. McKenzie*, 768 F.2d 602, 606 (5th Cir. 1985) (citing 18 U.S.C. § 3500(b)). But, this production is not required until after the defendant moves for production "of any covered statements after the witness has testified". *Id.* at 609; *see also United States v. Scott*, 524 F.2d 465, 467–68 (5th Cir. 1975). "The trial court *cannot compel* disclosure . . . at any earlier point"; however, early Jencks Act disclosure "should be encouraged". *McKenzie*, 768 F.2d at 609 (emphasis added).

As noted, on 24 July 2012, Hadi Yassine moved for production of the Government's transcripts in advance of trial. On 30 July, Mike Yassine moved for early disclosure of Jencks Act material and the production required by *Brady v. Maryland*, 373 U.S. 83 (1963) (requiring Government to disclose material evidence favorable to defendant), or *Giglio v. United States*, 405 U.S. 150 (1972) (extending Government's obligations under *Brady* to disclosure of impeachment evidence). Although he also moved to adopt motions filed by his codefendants, the court denied this motion on 15 August 2012. On 30 August, a hearing was held on the remaining motions.

During the hearing, the Government agreed to provide defendants with the transcripts by 31 August. Mike Yassine's attorney stated: "The transcripts . . . will be supplied tomorrow . . . and that's obviously acceptable". Additionally, the attorney sought the production, a week prior to trial, of Jencks Act material, to the extent required by *Brady* or *Giglio*. The Government explained defendants had a "massive amount of Jencks [Act] material already", but agreed to turn over all materials prior to trial.

In its order, the district court responded to each motion by noting the Government had "produced the bulk of discoverable material" and intended to provide, by 31 August, the transcript portions it intended to use at trial.

No. 13-50069

*United States v. Yassine*, No. 1-12-CR-105, order at 3 (W.D. Tex. 31 Aug. 2012). The court ruled that, as a result, the relevant motions were moot, but could be refiled if necessary. *Id.*

"We review alleged discovery errors for abuse of discretion and will order a new trial only where a defendant demonstrates prejudice to his *substantial* rights." *United States v. Garcia*, 567 F.3d 721, 734 (5th Cir. 2009) (emphasis added); *see also United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975). We review for clear error whether evidence is covered by the Jencks Act. *United States v. Alvarez*, No. 09-41207, 2014 WL 1364827, at *10 (5th Cir. 8 Apr. 2014).

Although the district court did not rule whether the recordings and transcripts were Jencks Act materials, it is irrelevant because all materials were either already in Appellants' possession or were produced prior to trial. Moreover, if these materials were covered by the Jencks Act, *see, e.g., United States v. Moore*, 452 F.3d 382, 389–90 (5th Cir. 2006) (applying Jencks Act framework to Government's failure to produce recorded conversations between defendant and Government witness), the court could not *compel* discovery.

**v.**

Regarding Mike Yassine's claiming the "exclusion of [his] expert from . . . the courtroom" constituted error, his attorney requested at trial that his Ivorian-French expert, Kahozi, be present during the upcoming testimony of the Government's expert linguists. (Ivorian French is French spoken in Côte d'Ivoire; in the recordings, Mike, Hadi, Steve, and Mohamad Yassine spoke Ivorian French, while alternating to other languages including Arabic and English.) The attorney requested the expert be present because the attorney did not speak the language. The Government clarified it did not intend to introduce any transcripts or recordings through its experts.

13

No. 13-50069

The district court explained there was no problem with the expert's being in the courtroom to assist Mike Yassine's attorney. On the other hand, the court ruled that, if Mike Yassine intended to call his expert as a witness, then, unless the Government consented, the expert would not be permitted in the courtroom during the testimony by the Government's experts. The Government did not answer affirmatively whether it objected to the expert's presence in the courtroom; instead, the court and counsel began discussing whether Mike Yassine expected to call his expert as a witness. Consequently, there was no ruling to exclude Kahozi from the courtroom. And, Mike Yassine's attorney did not make a subsequent objection.

If the issue was preserved, review is for an abuse of discretion. *United States v. Green*, 324 F.3d 375, 380 (5th Cir. 2003). Witnesses may be exempted from sequestration if "their presence is essential to the presentation of the case". *Id.* If the issue was not preserved, review is only for plain error.

Regardless of whether the court ruled Kahozi could not be present in the courtroom, or whether the claimed error was preserved, it is unclear how Kahozi's presence in the courtroom, at that time, would have assisted Mike Yassine's attorney. It is also unclear how exclusion detrimentally affected Kahozi's proffered expert testimony (and, therefore, his presence was not "essential"). Exclusion did not constitute plain error and was unlikely an abuse of discretion. But, even if exclusion was an abuse of discretion, the error would not weigh heavily in our cumulative-error analysis.

### vi.

Mike Yassine's last assertion for cumulative error is that the court erred by excluding his expert, Kahozi, from testifying, claiming it erroneously "deemed counsel's notice of expert untimely and insufficient". "When the exclusion of an expert due to discovery violations is challenged . . . on non-

14

No. 13-50069

constitutional grounds, the district court's abuse of discretion must be clear". *United States v. Crook*, 479 F. App'x 568, 575–76 (5th Cir. 2012) (finding no abuse of discretion when district court determined e-mail sent to Government with expert's résumé was insufficient notice).

Mike Yassine's attorney allegedly e-mailed a preliminary notice to the Government on 28 September; on 2 October, when asked by the court if Mike Yassine intended to call his expert, his attorney replied, "I may need to". The attorney did not send the Government notice including a summary of the potential testimony (which the district court concluded was still unclear) until 7 October, a week into trial.

Mike Yassine asserts Kahozi's testimony would have established the words in Ivorian French were not audible, and, if they were, were capable of several translations.   As a result, he claims the transcripts reflected inaccurately what was said by defendants.   Nevertheless, the interpretations offered by Kahozi did not differ materially from those offered by the Government.  As the court explained after hearing the proffer of the expert's testimony: "the fact that the gentleman can't hear [certain words in French] is inconclusive in itself".

The jury was instructed that the transcripts, although evidence, were admitted for the limited purpose of aiding the jurors as they listened to the recorded conversations.  Pursuant to the jury charge, whether the transcripts correctly reflected the conversations or speakers' identities was a determination to be made based on the jury's evaluation of the experts' testimony, "the nature of the conversation[,] and the reasonableness of the translations, in [the] light of all the evidence".

Considering the late and insufficient notice given the Government regarding Kahozi, his proffered testimony, and the secondary nature of the

No. 13-50069

transcripts as evidence, the exclusion of Kahozi's testimony was not an abuse of discretion—let alone the requisite "clear" abuse.

In sum, for the six claimed errors upon which Mike Yassine bases claimed cumulative error, and, other than the possible error, discussed *supra*, regarding excluding his expert witness from the courtroom when the Government's experts testified, Mike Yassine has not established any errors, "let alone constitutional errors that infringe upon fundamental fairness". *Alaniz*, 726 F.3d at 628. In short, the cumulative-error doctrine does not apply.

**b.**

For his other challenge to his convictions, Mike Yassine claims reversible error through the denials of the last two of his three continuance motions. Based on the reasoning provided *supra*, there was no abuse of discretion.

**2.**

Mike Yassine presents five issues regarding his sentence. In addition to maintaining his sentence is substantively unreasonable, he claims the court erred: in its calculation of total "laundered funds"; in applying a role adjustment; in assessing a $60,000 fine; and by failing to adequately explain his 151-month sentence.

Although post-*Booker*, the Sentencing Guidelines are advisory only, and a properly preserved objection to an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the Guideline-sentencing range for use in deciding on the sentence to impose. *Gall v. United States*, 552 U.S. 38, 51 (2007). For issues preserved in district court, application of the Guidelines is reviewed *de novo*; factual findings, only for clear error. *E.g., United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

No. 13-50069

**a.**

Mike Yassine claims the district court committed procedural error by finding the amount of laundered funds totaled $458,000. He asserts only that the inclusion of $270,000 in that total was error, claiming it was inconsistent with the Guidelines. Because he asserts the proper amount ($188,000) was less than $200,000, the claimed error increased his total offense level by four levels, pursuant to Guideline § 2S1.1(a)(2) (base offense level for laundering of monetary instruments). *See also* U.S.S.G. § 2B1.1(b)(1)(F), (H) (specific offense characteristics).

Calculation of total laundered funds is a factual finding, which need only be determined by a preponderance of the evidence, and is reviewed only for clear error. *United States v. Fernandez*, 559 F.3d 303, 319–20 (5th Cir. 2009). Factual findings on sentencing factors are not clearly erroneous if "plausible in [the] light of the record read as a whole". *Alaniz*, 726 F.3d at 622 (citation and internal quotation marks omitted). "The court need only make a reasonable estimate of the loss (in other words, the amount laundered)". *Id.* at 623 (citing U.S.S.G. § 2B1.1, cmt. n. 3(C) (internal quotation marks omitted)). The sentencing court's "loss determination is entitled to appropriate deference". *Id.*

A "defendant [is held] accountable for losses due to [his] own conduct as well as for those due to [his] 'relevant conduct'". *Id.* (quoting *United States v. Hammond*, 201 F.3d 346, 351 (5th Cir. 1999)). Relevant conduct includes all acts and omissions "counseled, commanded, [or] induced", as well as "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity". U.S.S.G. § 1B1.3(a)(1)(A), (B). To determine the scope of jointly undertaken criminal activity, a court may consider any explicit or implicit agreement "fairly inferred from the conduct of the defendant and others". *Id.* at cmt. n. 2.

No. 13-50069

"When a sentencing court uses information in the PSR [presentence investigation report] to make a factual determination such as loss amount, that information generally is presumed reliable and may be adopted . . . without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue". *United States v. Jones*, 533 F. App'x 448, 456 (5th Cir. 2013) (second alteration in original) (citations and internal quotation marks omitted).   When a PSR's information has adequate evidentiary basis, mere objections to the PSR are insufficient. *Id.*

The PSR found defendants laundered $194,000: $6,000 on 19 September 2008 (related to count 2); $8,000 on 10 October 2008 (related to count 3); $90,000 on 30 April 2009 (related to count 4); and $90,000 on 24 June 2009 (related to count 5).   The PSR also concluded defendants intended to launder an additional $1 million and, therefore, that Mike Yassine was responsible for a total of $1,194,000.

The district court sustained Mike Yassine's objection, however, to the inclusion of the additional $1 million.   As a result, he was responsible for only $194,000 in laundered funds.   For the total, however, the court added an additional $270,000, which Mike Yassine challenges: $90,000 for the 24 June transaction (reflecting that, during the transaction, he told Mohamad Yassine that he should have brought an additional $100,000; Mike Yassine would provide a check for only $90,000 for the $100,000 Mohamad Yassine would bring in cash), and $180,000 (reflecting Mike Yassine's December 2012 conversations with Mohamad Yassine, during which Mike Yassine expressed an interest in laundering another $200,000; Mike Yassine would only have provided a check for $180,000 for Mohamad Yassine's $200,000 in cash).   The court ruled the amount of laundered funds for Mike Yassine was $458,000 (which is $6,000 less than the sum of the above findings by the court; on the

18

No. 13-50069

other hand, $6,000 is the amount of laundered funds for count two, for which Mike Yassine was not charged).

Mike Yassine claims the inclusion of the $270,000 (amounts he discussed with Mohamad Yassine, but were not agreed upon or laundered) in the total amount of laundered funds is inconsistent with the earlier-cited Guideline § 2S1.1(a)(2) because money-laundering Guidelines are not premised on the loss a scheme produces, but on the value of funds laundered. Additionally, he contends the total amount inappropriately exaggerates the seriousness of the offense because the Government instigated these transactions.

A preponderance of the evidence established Mike Yassine "counseled or commanded" the future transactions involving the additional $270,000; furthermore, any agreement to launder that additional amount, between Mike Yassine and Mohamad Yassine, was explicit, rather than implicit. Therefore, the district court did not clearly err in adding the $270,000 to its calculation of total laundered funds.

**b.**

Mike Yassine contends the district court erred procedurally by applying the four-level upward adjustment under Guideline § 3B1.1(a) (leader of a criminal activity involving five or more participants), maintaining it erroneously considered two individuals as participants in the criminal activity. Along this line, he claims the inclusion of Steve Yassine and Gomez (identified *supra*, as an employee of Yassine Enterprises) as participants was not factually supported because neither was charged as a coconspirator in the indictment.

Whether defendant is an organizer or leader is a factual finding. *Alaniz*, 726 F.3d at 622. As discussed *supra*, factual findings at sentencing need only be determined by a preponderance of the evidence and are reviewed only for clear error. *Id.* at 619, 622. A "participant" knowingly participates "in some

No. 13-50069

part of the criminal enterprise", but "need not have been charged or convicted". *Id.* at 621; *United States v. Boutte*, 13 F.3d 855, 860 (5th Cir. 1994). When considering defendant's role, the district court should consider:

> (i) the exercise of decision making authority; (ii) the nature of participation in . . . the offense; (iii) the recruitment of accomplices; (iv) the claimed right to a larger share of the fruits of the crime; (v) the degree of participation in planning or organizing the offense; (vi) the nature and scope of the illegal activity; and (vii) the degree of control . . . exercised over others.

*Alaniz*, 726 F.3d at 622 (quoting U.S.S.G. § 3B1.1, cmt. n. 4) (internal quotation marks omitted). For the following reasons, the court did not clearly err in finding Gomez and Steve Yassine were participants.

At trial, Gomez testified: he worked for Mike Yassine for years; he believed Mohamad Yassine was a drug dealer and, otherwise, did not have a job; Steve Yassine asked Gomez to help with a drug deal for Mohamad Yassine; Mohamad Yassine came to the office, at least twice, with a lot of cash; on 30 April 2009, Mohamad Yassine came to the office with a bag of cash; and, on that day, Mike Yassine told Gomez to throw the then-empty bag in a neighbor's dumpster.

Regarding Steve Yassine, the PSR stated: on 31 July 2008, Mohamad Yassine met with Steve Yassine, explained he had $50,000 in a safety-deposit box, and asked him to contact Mike Yassine; Steve Yassine called Mike Yassine and asked if he would launder $30,000 for Mohamad Yassine; afterwards, Steve Yassine told Mohamad Yassine to take the cash to the office and Mike Yassine would issue him a check.

### c.

Mike Yassine also maintains the district court erred procedurally by imposing a $60,000 fine. He asserts the Government had the burden of

20

No. 13-50069

showing he could pay a fine before one could be imposed because the PSR recited facts "showing limited or no ability to pay a fine". Mike Yassine further asserts the Government did not show he could pay a fine, and, therefore, the fine was an abuse of discretion and substantively unreasonable. This court reviews the reasonableness of a defendant's sentence, including a fine, for abuse of discretion. *E.g., United States v. Reyes-Sanchez*, 544 F. App'x 284, 285 (5th Cir. 2013) (citing *United States v. McElwee,* 646 F.3d 328, 338–39, 340 n.8 (5th Cir. 2011)).

Although the PSR concluded Mike Yassine's "true financial situation is unknown", it did not recommend that he did not have any realistic ability to pay. Rather, the PSR summarized Mike Yassine's substantial assets and liabilities, as well as stated he had other, possibly substantial, monetary resources. Because the imposition of the $60,000 fine was not contrary to the findings and recommendations made in the court-adopted PSR, the Government did not have the burden of showing Mike Yassine was able to pay a fine. *See United States v. Martinez*, 151 F.3d 384, 396 (5th Cir. 1998) (explaining although defendant claimed PSR substantiated indigent status, he still had burden to show inability to pay because PSR made no recommendation based on insufficient information to assess ability to pay).

In further support of his claim against assessment of a fine, Mike Yassine emphasizes he is represented by *appointed counsel* in a separate case regarding false tax returns. Regarding ability *vel non* to pay a fine, such representation by appointed counsel in other proceedings has not been dispositive. *See United States v. Kirkpatrick*, 237 F. App'x 977, 979 (5th Cir. 2007) (explaining representation by appointed counsel did not indicate inability to pay fine in future).

No. 13-50069

The court determined Mike Yassine's total offense level was 34; thus, the applicable range for the fine was $17,500 to $175,000. A $60,000 fine was well within this range. Significantly, Mike Yassine's attorney stated, in a footnote to his opening brief on appeal, as well as conceded at oral argument here, that Mike Yassine has paid the fine. In short, the court did not err procedurally in assessing a fine, and it was not substantially unreasonable.

### d.

Mike Yassine asserts the court also erred procedurally by failing to adequately explain the sentence imposed. Because his attorney objected to the sentence and fine only "on the basis of procedural errors and as substantively unreasonable", review is only for plain error. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) (explaining defendant could have asked for further explanation at sentencing, but failed to do so; thus, plain-error review applied).

At sentencing, the court heard testimony from Mike Yassine, heard his attorney speak on his behalf, and heard testimony from a close friend of Mike Yassine. The court then stated: "Well, Mr. Yassine, . . . this is an illustration of what can go wrong when you do wrong. But the truth of the matter is, [Mike Yassine's attorney] is, of course, wrong. The conduct, the results of what occurred ripples in the water. You don't know how many lives you've affected . . . . But I see no reason for not having a [G]uideline sentence".

The sentence was within the advisory-Guideline range, greater than 24 months, and imposed due to the seriousness of the offense, the amount of funds involved, and Mike Yassine's role in the offense. Given the district court's full statement at sentencing and its statement of reasons, there is no clear or obvious error. *See United States v. Fajardo*, 469 F. App'x 393, 395 (5th Cir. 2012).

No. 13-50069

### e.

Finally, in contending his sentence is substantively unreasonable, Mike Yassine claims: the court should have considered "sentencing entrapment"; and the claimed procedural errors "impact[ed] the substantive unreasonableness of the sentence". A discretionary within-Guidelines range is presumptively reasonable and entitled to deference. *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008).

As Mike Yassine concedes, our court has not yet adopted the concept of "sentencing entrapment". *See, e.g.*, *United States v. Jones*, 664 F.3d 966, 984 (5th Cir. 2011) (under that concept, such entrapment occurs when defendant is predisposed to commit lesser offense, but commits greater offense because Government controlled amount of drugs or money involved in offense). The sentence was at the bottom of the applicable, advisory Guidelines range. Moreover, in the light of our consideration of the preceding issues, Mike Yassine has failed to rebut the presumption that his sentence is reasonable.

### B.

Hadi Yassine presents four claims: insufficient evidence for his three convictions; and procedural error in calculating his total-offense level for sentencing. As noted *supra*, each fails.

### 1.

Hadi Yassine moved for judgment of acquittal as to all counts at the close of the Government's case, at the close of all evidence, and within 14 days of the jury verdict. Because he properly preserved his challenges to sufficiency of the evidence, review is *de novo*. *E.g.*, *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007). Evidence is sufficient to support a conviction "if a reasonable trier of fact could conclude . . . the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to

No. 13-50069

the verdict and drawing all reasonable inferences from the evidence to support the verdict". *Id.* (alteration in original) (quoting *United States v. Ragsdale*, 426 F.3d 765, 770–71 (5th Cir. 2005)) (internal quotation marks omitted).

**a.**

Hadi Yassine claims the evidence is insufficient to permit a rational juror to find, beyond a reasonable doubt, he is guilty of the conspiracy charged in count one (including aiding and abetting, under 18 U.S.C. § 2), and, therefore, he also cannot be held responsible for the acts of his alleged coconspirators. Primarily, he asserts there is insufficient evidence because "mere presence at the scene of the crime or close association with co-conspirator[s] will not alone support [the] inference of participation in a conspiracy".

To establish conspiracy to commit money laundering under 18 U.S.C. § 1956(h), the elements are: (1) an "agreement between two or more persons to commit money laundering"; and (2) "defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose". *United States v. Fuchs*, 467 F.3d 889, 906 (5th Cir. 2006). "Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence." *Id.* (quoting *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994)) (internal quotation marks omitted). "Circumstantial evidence may establish the existence of a conspiracy, as well as an individual's voluntary participation in it, and circumstances altogether inconclusive, if separately considered, may, by their number and joint operation . . . be sufficient." *Alaniz*, 726 F.3d at 601 (alteration in original) (quoting *United States v. Fernandez*, 559 F.3d 303, 315 (5th Cir. 2009)) (internal quotation marks omitted).

The jury had evidence, including the transcripts and recordings, demonstrating, *inter alia*: the close personal and business relationships among Appellants and Steve Yassine; those brothers used Yassine Enterprises

24

No. 13-50069

accounts for personal expenditures; Mohamad Yassine contacted Hadi Yassine for help finding cocaine sources; Mohamad, Steve, and Hadi Yassine discussed money laundering; Hadi Yassine instructed Mohamad Yassine not to use a certain person for money laundering; Mohamad and Hadi Yassine discussed arranging a drug deal; they discussed a person involved in narcotics; they arrived in the same vehicle at the Yassine Enterprises office for the 10 October 2008 transaction (count 3); during that transaction, Hadi Yassine told Mohamad Yassine: "Don't put us in problems", after which Hadi Yassine asked Mike Yassine for $500 in cash; during a December 2008 meeting with Appellants and Mohamad Yassine, Hadi Yassine asked Mohamad Yassine where he was getting cocaine; Hadi Yassine had knowledge of the $100,000 cash-for-checks scheme two days prior to the 30 April 2009 transaction (count 4); during that transaction, Hadi Yassine asked Mike Yassine if Mohamad Yassine was wired, after which Mike Yassine handed Hadi Yassine an unknown amount of cash; in May 2009, Hadi Yassine agreed to speak to Mike Yassine on Mohamad Yassine's behalf about whether Mohamad Yassine could deposit some of the checks earlier than planned; and, finally, Hadi Yassine made deposits of $9,000 into his bank account on 28 occasions from 1 June 2009 through 7 September 2010.

In the light of this evidence, a rational juror could have found Hadi Yassine was guilty, beyond a reasonable doubt, of the conspiracy charged in count one. *See, eg., Alaniz*, 726 F.3d at 602–03.

### b.

In claiming there is insufficient evidence to permit a rational juror to find, beyond a reasonable doubt, he is guilty as a principal for laundering $8,500 of drug money under count three (10 October 2008 transaction), Hadi Yassine asserts the evidence is insufficient to establish that he conducted, or

No. 13-50069

attempted to conduct, a financial transaction, or that he acted with intent to conceal or disguise the nature, location, source, ownership or control of the property. Moreover, he asserts the evidence is insufficient to permit a rational juror to find, beyond a reasonable doubt, that he is guilty of aiding and abetting others to commit the offense under count three. Finally, because the jury was given a *Pinkerton* instruction, Hadi Yassine asserts that, under *Pinkerton*, he "cannot be held responsible for the acts of others" under count three. *See Pinkerton v. United States*, 328 U.S. 640 (1946) (explaining coconspirator liability).

To have aided and abetted a crime within the meaning of 18 U.S.C. § 2, the Government must show Hadi Yassine: "(1) associated with the criminal enterprise; (2) participated in the venture; [and] (3) sought by his action to make the venture succeed". *United States v. Valdez*, 453 F.3d 252, 260 (5th Cir. 2006) (alteration in original) (quoting *United States v. Norman*, 415 F.3d 466, 471 (5th Cir. 2005)) (internal quotation marks omitted). "A defendant associates himself with the unlawful financial manipulations if he shares in the criminal intent of the principal [and] participates in those manipulations if he engages in some affirmative conduct designed to aid the [criminal activity]". *United States v. Delgado*, 256 F.3d 264, 276 (5th Cir. 2001) (citations omitted).

For finding guilt under *Pinkerton*, "a defendant is deemed guilty of substantive acts committed in furtherance of the conspiracy by any of his criminal partners once the conspiracy and the defendant's knowing participation therein [have] been established beyond a reasonable doubt". *United States v. Garcia*, 917 F.2d 1370, 1377 (5th Cir. 1990). Therefore, to be guilty under *Pinkerton*, the jury must have found Hadi Yassine was a member of the conspiracy charged in count one, and during that time, a coconspirator

No. 13-50069

committed the offense charged in count three, in furtherance, or in reasonable consequence, of the conspiracy. *See, e.g., United States v. Madrid*, 495 F. App'x 427, 430 (5th Cir. 2012).

Because sufficient evidence supports Hadi Yassine's conviction on count one (conspiracy), and because overwhelming evidence supports Mike Yassine's conviction for laundering $8,500 of drug money under count three (10 October 2008 transaction), sufficient evidence supports Hadi Yassine's count three conviction under *Pinkerton*. Accordingly, it is not necessary to decide whether he was also guilty, beyond a reasonable doubt, under 18 U.S.C. § 2 (aiding and abetting).

### c.

For his last sufficiency-of-the-evidence challenge, Hadi Yassine claims the evidence for count four (30 April 2009 transaction) fails to establish: (1) he conducted, or attempted to conduct, a financial transaction; (2) he acted with intent to conceal or disguise the nature, location, source, ownership, or control of property; (3) he aided or abetted others in committing the offense; and (4) he is guilty under *Pinkerton* liability. As with count three, sufficient evidence supports his count four conviction under *Pinkerton*. And, as stated for count three, it is not necessary to reach whether he was guilty, beyond a reasonable doubt, under 18 U.S.C. § 2.

### 2.

Finally, regarding his sentence, Hadi Yassine claims the court erred procedurally by including as relevant conduct the $90,000 involved in the 24 June 2009 transaction (count 5, for which he was not charged), maintaining the transaction was not a foreseeable act of others in furtherance of the jointly-undertaken criminal activity.

No. 13-50069

As discussed *supra*, courts may consider "as 'relevant conduct', acts in addition to those underlying the offense of conviction" in determining a sentence. *Jones*, 533 F. App'x at 453 (quoting *United States v. Dickson*, 632 F.3d 186, 192 (5th Cir. 2011)) (internal quotation marks omitted).  Relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity".  *Id.*  (citations and internal quotation marks omitted).  "The scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." *Id.* (alteration in original) (quoting U.S.S.G. §1B1.3 cmt. n. 2) (internal quotation marks omitted).  This court reviews only for clear error factual findings on defendant's relevant conduct for sentencing purposes. *United States v. Solis*, 299 F.3d 420, 461 (5th Cir. 2002).

As also discussed, Hadi Yassine was closely connected with his brother, Mike Yassine (who was charged in count 5), and had full knowledge of Mohamad Yassine's drug-business and of the plan to launder funds.  As of 2 May 2010, Hadi Yassine knew Mohamad Yassine was still involved with dealing drugs and was still working with Hadi Yassine's brother, Mike Yassine.  In addition, Hadi Yassine began making consistent $9,000-deposits into his bank account in June 2009, and continued to do so through September 2010.  As a result, the court properly found that, as to Hadi Yassine, a preponderance of the evidence established the 24 June transaction was a foreseeable act in furtherance of the conspiracy.

### III.

For the foregoing reasons, the judgments are AFFIRMED.